UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MABEL LOPEZ, individually and on
behalf of others similarly situated

       Plaintiff,

v.                              Case No:  2:15-cv-303-FtM-38MRM

MIKE SCOTT, in his official capacity
as Sheriff of Lee County, Florida,

       Defendant.

_____/

## ORDER[1]

      This matter comes before the Court on Defendant Mike Scott's ("Sheriff Scott")

Motion to Dismiss Amended Complaint (Doc. #22) filed on July 20, 2015.  Plaintiff Mabel

Lopez ("Lopez") filed a Response in Opposition (Doc. #26) on August 10, 2015.  The

matter is ripe for review.

## Background[2]

      This is an action alleging the use of unapproved radar guns that resulted in

thousands of individuals being unlawfully stopped, detained, and seized over an eleven

year period.  Florida law governs what devices may be used to determine the speed of a

motor vehicle on a public road.  (Doc. #17 at 3).  Among the devices regulated are radar

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Amended Complaint alleges the following facts, which the Court accepts as true for the purpose of deciding Sheriff Scott's Motion to Dismiss.  See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).

guns.  (Doc. #17 at 3-4).  Radar guns determine the speed of nearby vehicles by sending radio waves towards the vehicle and then calculating the time it took that radio wave to reach that vehicle.  (Doc. #17 at 4).  The width of the radio wave sent varies, depending on the radar gun used.  (Doc. #17 at 4).  A wider radio wave increases the chances that the radar gun will return the speed of a vehicle other than the one targeted.  (Doc. #17 at 4).  Because of this risk, Florida maintains a list of approved radar gun devices that utilize an appropriate and acceptable radio wave beam width.  (Doc. #17 at 4).

Unaware that Florida maintained such a list, the Lee County Sheriff's Office purchased one hundred Python Series II radar guns in 2004 and distributed them to its deputies.  (Doc. #17 at 4-5).  These Python Series II radar guns were then used to initiate thousands of traffic stops over the next eleven years.  (Doc. #17 at 4-5).  This is problematic because the Python Series II radar gun was never on the approved device list during this eleven year period.  (Doc. #17 at 5).  As one of the individuals who was pulled over after having their speed detected using a Python Series II radar gun, Lopez brought the instant action against Sheriff Scott on behalf of himself and all others who were stopped, detained, and seized using this unapproved equipment.  (Doc. #17 at 5).  The Amended Complaint asserts four counts: Violation of Lopez's Civil Rights under 42 U.S.C. § 1983 (Count 1); Common Law False Imprisonment (Count 2); Negligence (Count 3); and Violation of Lopez's Constitutional Rights under Article I, Section 12 of the Florida Constitution (Count 4).  (Doc. #17 at 9-16).

## Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint,

and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss.[3] *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Marsh*, 268 F.3d at 1036 n.16. Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

---

[3] Lopez argues the Court must employ the *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), standard when analyzing the instant Motion. (Doc. #26 at 2-3). The Court is perplexed by this argument, as the *Conley v. Gibson* standard was replaced over six years ago by the *Twombly–Iqbal* plausibility standard. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (noting that, in *Iqbal,* the Supreme Court "explicitly held that the *Twombly* plausibility standard applies to all civil actions").

## Discussion

Sheriff Scott filed the instant Motion, seeking to dismiss each count asserted in this action based on five arguments.  First, Sheriff Scott argues the § 1983 claim must be dismissed because Supreme Court precedent forbids plaintiffs from obtaining damages under § 1983 if a judgment would necessarily imply the invalidity of her conviction or sentence.  (Doc. #22 at 7-9).  Second, Sherriff Scott argues the § 1983 claim must also be dismissed because Lopez was not unreasonably seized, as probable cause existed for the underlying traffic stop.  (Doc. #22 at 9-11).  Third, Sheriff Scott believes both the § 1983 and false imprisonment claims should be dismissed because Lopez's conviction for the underlying traffic offense conclusively establishes probable cause.  (Doc. #22 at 12-13).  Fourth, Sherriff Scott avers that the negligence claim should be dismissed because Lopez failed to comply with the notice requirements pursuant to Fla. Stat. § 768.28.  (Doc. #22 at 13-19).  And finally, Sherriff Scott seeks dismissal of the Florida Constitution violation claim on the basis that there is no cause of action for monetary damages based on a violation of the Florida Constitution.  (Doc. #22 at 19).  Lopez concedes that her negligence claim should be dismissed without prejudice, but opposes the remainder of the Motion.  (Doc. #26 at 5-12).  The Court will address each argument in turn.[4]

---

[4] When considering these arguments, Sheriff Scott requests that the Court take judicial notice of Lopez's citation for the underlying traffic stop, the state court documents filed when the citation was challenged, and the state court's order disposing of Lopez's challenge, as all these documents are public records.  (Doc. #22 at 6-7).  The Court finds this argument persuasive and takes judicial notice of these documents, which were attached to the instant Motion (Doc. #22-1).  *See Halmos v. Bomardier Aerospace Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010) ("[A] district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.") (citation omitted).

### A.    Count 1 – Violation of Lopez's Civil Rights under § 1983

    *1. Heck's Favorable Termination Requirement*

Sheriff Scott first argues that the § 1983 claim must be dismissed because a favorable judgment for Lopez on her § 1983 claim would necessarily imply the invalidity of her conviction for the underlying traffic offense, in violation of the *Heck* favorable termination requirement. (Doc. #22 at 7 (citing *Heck v. Humphrey*, 512 U.S. 477, 144 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). Lopez responds by arguing that she was not convicted for the underlying traffic offense of speeding, and therefore *Heck's* favorable termination requirement is inapplicable to this action. (Doc. #26 at 5-6). The Court finds Lopez's argument persuasive.

The *Heck* favorable termination requirement for § 1983 actions arose in response to prisoners seeking an avenue to invalidate their sentences through § 1983, even though their convictions had been affirmed and they had already exhausted all habeas corpus relief efforts available to them. *See Heck*, 512 U.S. at 477, 144 S.Ct. at 2367-68. Heck, a prisoner who had been convicted of manslaughter, filed a § 1983 civil rights action against several individuals involved in his prosecution, seeking monetary damages for acts such as the intentional destruction of exculpatory evidence. *Id.* at 478-80, 144 S.Ct. at 2368-69. Importantly, Heck waited until after the Indiana Supreme Court had affirmed his sentence and he had exhausted his chances at securing a writ of habeas corpus from the federal courts to file this action. *Id.* Understanding that allowing Heck to proceed with his § 1983 action could produce "two conflicting resolutions arising out of the same or identical transaction," *id.* at 484, 144 S.Ct. at 2371, the Supreme Court held that "[a] claim for damages bearing [a] relationship to a conviction or sentence that has *not* been []

invalidated is not cognizable under § 1983," *id.* at 487, 144 S.Ct. at 2372 (emphasis in original).

Relying on *Heck*, Sherriff Scott argues that Lopez cannot maintain her § 1983 claim because she was convicted of the underlying offense, and that conviction has not been invalidated.  (Doc. #22 at 7-9).  But there is one fatal problem with this argument: Lopez was not convicted for the underlying traffic offense, her adjudication was withheld. (Doc. #22-1 at 6).  While Sherriff Scott acknowledges this fact and nevertheless attempts to argue a withheld adjudication constitutes a conviction, the applicable Florida Statutes provide otherwise.  The underlying traffic offense Lopez was charged with is speeding, which is governed by Fla. Stat. § 316.183.  That statute provides, in pertinent part, "[a] violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318."  Fla. Stat. § 316.183(7).  And a review of chapter 318 reveals that "[i]f adjudication is withheld for any person charged or cited under this section, such action is not a conviction."  Fla. Stat. § 318.14(11).  Therefore, without the presence of a conviction, the *Heck* favorable termination rule is inapplicable to this action.

### 2.  The Existence of Probable Cause

Next, Sherriff Scott presents two probable-cause based arguments.  The first contends the § 1983 claim should be dismissed because the existence of a conviction establishes that probable cause was present during the underlying traffic stop.  (Doc. #22 at 12-13).  But this argument fails for the same reason stated above: Lopez was not convicted for the underlying traffic offense, her adjudication was withheld. The second contends the § 1983 claim should be dismissed because there was probable cause present during the underlying traffic stop, and the presence of probable cause is not

6

automatically negated when a stop and seizure violates a state-specific law. (Doc. #22 at 9-11). In response to this latter argument, Lopez avers that the issue of probable cause requires evidentiary considerations that are improper at this stage in the litigation. (Doc. #26 at 6-7). The Court finds Lopez's position persuasive.

No one disputes that a traffic stop constitutes a seizure that is afforded Fourth Amendment protection. *See Brendlin v. California*, 551 U.S. 249, 255, 127 S.Ct. 2400, 2406, 168 L.Ed.2d 132 (2007) ("The law is settled that in Fourth Amendment terms a traffic stop entails a seizure[.]"). Such a seizure is constitutionally reasonable if there is probable cause to believe that a traffic violation has occurred. *Rodriguez v. United States*, 575 U.S. ----, ----, 135 S.Ct. 1609, 1617, 191 L.Ed.2d 492 (2015). This requires that "the facts and circumstances within an officer's knowledge and of which the officer has reasonably trustworthy information be sufficient to warrant a prudent man in believing" that a traffic violation has occurred. *United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012) (citation omitted). A traffic stop that is supported by probable cause conforms to the Fourth Amendment, and therefore cannot serve as the basis for a § 1983 claim. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (noting that a *prima facie* § 1983 claim requires a showing that the plaintiff's constitutional rights were violated).

Sheriff Scott argues that the § 1983 claim cannot stand because his deputies "use of the [Python Series II radar gun] in formulating probable cause to stop [Lopez] was reasonable under the Fourth Amendment, regardless of whether the evidence from the device could be used in a prosecution against [Lopez]." (Doc. #22 at 11). But this argument is misplaced at this stage in the litigation. In analyzing the instant Motion, the Court must focus on the four corners of the Amended Complaint and the exhibits attached

to the Motion that were judicially noticed.[5]  None of these documents provide a basis for determining that probable cause existed for the underlying traffic stop.  In fact, the Amended Complaint alleges that Sheriff Scott's deputies failed to have any probable cause when they stopped Lopez, or any of the other drivers whose speed was determined using the Python Series II radar gun.  (Doc. #17 at 5-7).  When this allegation is taken as true at this stage in the litigation, dismissing the § 1983 claim on the basis that probable cause existed for the underlying traffic stop would be improper. This argument must therefore be denied.

**B.  Count 2 – Common Law False Imprisonment**

Sheriff Scott presents the same two probable cause arguments that were addressed and denied above as the sole basis for dismissing the common law false imprisonment claim.  (Doc. #22 at 12-13).  These are arguments are once again denied.

**C.  Count 3 – Negligence**

Lopez concedes that her negligence claim should be dismissed.  (Doc. #26 at 8). This claim is therefore dismissed without prejudice.

**D. Count 4 – Violation of Lopez's Rights under the Florida Constitution**

Sheriff Scott offers two final arguments, both averring that the Florida constitutional right claim should be dismissed.  (Doc. #22 at 19).  The first contends that without a separate enabling statute, "no cause of action for money damages exists for a violation of Article 1, section 12 of the Florida Constitution."  (Doc. #22 at 19).  Lopez responds by contending that an action for monetary damages is appropriate if the action

---

[5] No documents that are central to the claims at issue were attached or referenced in the Amended Complaint.

also seeks injunctive relief, and her claim seeks both monetary and injunctive relief.  (Doc. #26 at 8-9).  The Court finds Lopez's argument persuasive.

In *Depaola v. Town of Davie*, 872 So.2d 377 (Fla. 4th DCA 2004), a Florida state appellate court dealt with this precise issue.  There, the court overturned a trial court's dismissal of an action seeking both monetary and injunctive relief for acts that violated the plaintiff's rights under the Florida Constitution.  *Depaola*, 872 So.2d at 381.  In doing so, the court affirmed that an action seeking only monetary relief for violations of the Florida Constitution is not permissible unless a separate enabling statute is available.  *Id.* But when that action also seeks injunctive relief, no separate enabling statute is necessary because the action can proceed under the Florida Declaratory Judgment Act. *Id.*  Here, Lopez seeks not only monetary relief, but also injunctive relief in the form of requiring Sheriff Scott to cease using all "illegal radar speed measuring devices" and to "properly train his personnel."  (Doc. #17 at 15-16).  The presence of this additional request for injunctive relief allows this claim to survive this stage of the litigation.[6]

The second argument contends that because Article 1, section 12 of the Florida Constitution, by its own terms, must be construed in conformity with the Fourth Amendment of the United States Constitution, the existence of probable cause prevents Lopez from bringing this claim.  (Doc. #22 at 19).  This argument fails for the same reason detailed above: At this stage in the litigation, the Court must accept the Amended Complaint's allegations as true, and those allegations contend Sherriff Scott's deputies

---

[6] In the alternative, Sheriff Scott argues that even with this additional request, this claim must be dismissed because as of June 2, 2015, Florida has approved the Python Series II radar gun for use by law enforcement officers, rendering the requested injunctive relief moot.  (Doc. #22 at 24-25).  The Court disagrees.  Lopez does not seek injunctive relief only in the form of requiring Sheriff Scott to cease using the Python Series II radar gun.  Rather, Lopez seeks relief in the form of requiring Sheriff Scott to cease using all "illegal radar speed measuring devices" and to "properly train his personnel."  (Doc. #17 at 15-16).  The fact Florida recently approved the Python Series II radar gun for use does not moot these requests.

lacked probable cause when they stopped and detained Lopez for the underlying traffic offense.  Consequently, this argument must be denied.

## E. Class Certification Issues

Sheriff Scott uses the remainder of his Motion to argue why this action is not "properly certifiable as a class action." (Doc. #22 at 19-25).  But the issue of whether this putative class should be certified is not currently before the Court.  Therefore, these arguments are premature and must be denied.

Accordingly, it is now

**ORDERED:**

1. Defendant Mike Scott's Motion to Dismiss Amended Complaint (Doc. #22) is **GRANTED in part and DENIED in part**.

2. Plaintiff Mabel Lopez's Count 3, alleging negligence, is **DISMISSED without prejudice.**

3. The remainder of Defendant Mike Scott's Motion is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida, this 8th day of September, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

10